W. H. EISENBREY v. PENNA. CO. FOR INS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued April 2, 1891—Decided April 13, 1891.
[To be reported.]

(a) A testatrix directed that a dwelling, at a certain valuation, should be
   deemed a part of the one third of her residuary estate, the income whereof
   she gave to her sister for life.   Her executors were directed to permit
   the sister to occupy the dwelling until it should be sold, she paying the
   taxes and making repairs.

(b) The sister was permitted to occupy the house; and, during her occu-
   pancy, upon a public street in front of it a fence was erected enclosing
   the front steps and having a door therein, extending when wide open
   ten inches beyond the limit within which obstructions were permitted
   by a city ordinance:

Statement of Facts.

1. The executor, being a mere trustee not in the occupancy of the prop-
erty even by a tenant, and exercising no control over it, was not respon-
sible for the act of erecting the fence, and therefore was not liable in
damages for an injury to a passer-by, caused by the sudden opening of
the door against him.
2. Moreover, even if the fence itself was a nuisance, the proximate cause
of the injury was not the existence of the fence, but the sudden throwing
open of the door; and as this was not done by the executor, or by any
agent or servant in the latter's employ, there was no room for the appli-
cation of the doctrine of respondeat superior: Kies v. Erie City, 135
Pa. 144.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 186 January Term 1891, Sup. Ct.; court below, No. 172
December Term 1888, C. P. No. 3.

On November 19, 1888, William H. Eisenbrey brought tres-
pass against the Pennsylvania Company for Insurance, etc.,
trustee under the will of Jane Thomas, deceased, to recover
for personal injuries alleged to have been received in conse-
quence of negligence of the defendant in permitting a fence,
with a gate or door therein, to be erected in front of certain
premises on Filbert street in Philadelphia. The defendant's
plea was not guilty.

At the trial on October 31, 1890, the following facts were
shown on the part of the plaintiff:

About seven o'clock in the evening of November 7, 1888,
the plaintiff, then sixty-nine years of age, was passing along
the north side of Filbert street. When in front of house No.
1421, a gate or door in a picket fence, enclosing the front steps,
was suddenly thrown open and struck against him, causing
him to lose his balance and fall. In his fall he received a
fracture of the left thigh. On cross-examination he testified:
"Q. Your claim is that, as you were passing this house, the
gate or door was suddenly thrown open, and struck you in the
breast, knocking you down? A. Yes, sir. Q. The accident
was caused by the violent throwing open of this gate without
warning to you? A. Yes, sir."

The house at No. 1421 Filbert street was built in 1842, and
at the time of its building it receded four feet from the street
line. By a city plan, confirmed April 23, 1888, the four feet

Statement of Facts.

of recession were added to the width of the street, but no proceedings were ever had by the city to obtain possession of the additional ground thus embraced in the street. About a year before the plaintiff's accident, a picket fence was erected enclosing the front steps of the house on three sides, except that the lower step projected beyond it. The width of the structure, across the steps, was seven feet and two inches. The fence extended into the street seven feet beyond the house line. The entire width of the pavement, from the house line to the curb, was seventeen feet nine inches. In the front of the fence was a gate or door two feet, four and one half inches wide.

An ordinance of the city, enacted September 23, 1864, declared it a nuisance to maintain any cellar-door, porch or steps, extending more than four feet six inches into any footway of any street of the width of fifty feet or upwards, or a proportionate distance on streets of less than fifty feet. On June 6, 1885, that ordinance was amended by adding the following proviso: " Provided, that this section shall not apply to any street one hundred feet wide or upwards; and provided further, that such extension shall not reduce the width of the footway to less than eighteen feet." Samuel L. Smedley, the chief engineer of the city, testified that when the gate in question was opened to its full swing it extended ten inches beyond the nuisance limit of four feet six inches, but when shut it was within the limits in which obstructions were permitted.*

Jane Thomas, who died in 1876, was the owner of this house. By her will, duly admitted to probate, she provided as follows:

" It is my will and direction that my house and lot, now No. 1421 Filbert street, in the city of Philadelphia, shall, at the value of $20,000, be deemed and taken as a part of the one third of my residuary trust-estate, whereof my sister Sarah R. Bull has the income for life; and I authorize and empower my executors, until they shall decide it to be expedient to sell the said house and lot, to permit and suffer her, the said Sarah R. Bull, to occupy and use the same as a home for her, she paying the taxes thereon and keeping the same in repair at her own expense while she shall so occupy the same."

---

* The witness measured the four feet six inches from the original line of the street, in view of the fact that the four feet added to its width in April, 1888, had never been legally condemned by the city.

Charge of Court below.

The will appointed the defendant company to be the executor thereof.

Jarvis Mason, trust officer of the defendant company, being called by the plaintiff, testified as follows:

"Q. You know Mrs. Sarah Bull? A. Yes, sir. Q. Has she a life-estate in the property 1421 Filbert street? A. She has. Q. Did your company have anything to do with putting up this paling or erection about the premises there? A. No, sir; nothing. Q. Did you ever see it there? A. I have. Q. Do you know how long it had been there? A. No, sir."

Cross-examination: "Q. You had no right to interfere in any way, shape, or form with the property, had you? A. No, sir; not any. Q. And you had nothing to do with the erection of that fence? A. No, sir; nothing whatever. Q. You accidentally saw it in passing? A. Yes, sir; not as an officer of the company, but merely walking around there occasionally."

Another witness for the plaintiff testified: "Q. Do you know who occupied the house; was it Mrs. Bull? A. I think it was the lady over in the court-room. Q. She was occupying it at the time the thing was put there, wasn't she, and she has been there for many years? A. Yes, sir; I think so." The same witness stated that the fence was taken away soon after the accident to the plaintiff.

At the close of the testimony for the plaintiff, a motion for a nonsuit having been overruled and the defendant offering no testimony, the court, FINLETTER, P. J., charged the jury in part as follows:

The questions of law which govern the right of the plaintiff in this case to recover I have decided in his favor. In other words, [I have decided that, as matter of law, the defendant in this action is responsible for the injuries which the plaintiff suffered on that occasion.] [2] In this I may or may not be right, but for the purposes of this case you must take that to be the law. Hereafter, when more time can be given to the consideration of the matter, and when I shall have the assistance of my two brother judges, the questions of law can be considered more at length and with more care. Therefore, the only question for you to determine is, what damages will be proper compensation to the plaintiff for the injuries which he has sustained. . . .

Counsel for defendant has requested me to charge you as follows:

1. The learned court is asked to direct a verdict for defendants.

Answer: I refuse to affirm that point.[1]

—The jury returned a verdict in favor of the plaintiff for $5,000. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The refusal of defendant's point.[1]

2. The part of the charge embraced [ ][2]

*Mr. John G. Johnson*, for the appellant:

1. There was no negligence on the part of the defendant in the erection complained of; it is not responsible for an illegal act not authorized by it nor within its control. Under the will of Jane Thomas, directing the trustee to permit Sarah Bull to occupy the premises as a home, the latter had an equitable estate for life: Arkwright v. Colt, 2 Y. & C. 4; Loring v. Carnes, 148 Mass. 223. The liability of a trustee bound to permit a cestui que trust to occupy premises, is no greater than that of a landlord who voluntarily transfers the possession to a tenant.

2. It is elementary law that a landlord is not responsible for anything done on the demised premises by the tenant, during the term of his lease: Shear. & Redf. on Neg., § 708; Wharton on Neg., § 817; Wood on L. & T., 917; Woodfall on L. & T., *735; Bears v. Ambler, 9 Pa. 193; Grier v. Sampson, 27 Pa. 183; Little Schuylkill Co. v. Richards, 57 Pa. 142; Wunder v. McLean, 134 Pa. 334; Lowell v. Spaulding, 4 Cush. 277; Pretty v. Bickmore, L. R. 8 C. P. 401; Kirby v. Market Ass'n, 14 Gray 250; Ahern v. Steele, 115 N. Y. 203; Offerman v. Starr, 2 Pa. 394; Delaware etc. R. Co. v. Sanderson, 109 Pa. 583.

3. The person who actually threw open the door negligently is alone responsible, unless shown to be the servant or employee of a principal responsible for the servant's act. The fence and door did not constitute a nuisance, and no harm could come to any person by reason of the proper opening of the door. The whole negligence consisted in the improper opening of it. It

Arguments.

was not shown who threw it open, and it was incumbent on the plaintiff to show that the person doing this was an employee of the defendant: Kies v. Erie City, 135 Pa. 150.

*Mr. George B. Carr,* for the appellee:

1. Under the will of Jane Thomas, the rights of Sarah R. Bull, with reference to the property in question, were dependent upon conditions and contingencies. She could have no interest in it except while actually occupying the house, and her interest was to continue only so long as she complied with the direction to pay the fixed charges. Even if she did comply therewith, the trustee could have determined her occupancy at any time. She was no more than a tenant at will: Hurd v. Cushing, 7 Pick. 169; Burns v. Bryant, 31 N. Y. 453; Johnson v. Johnson, 13 R. I. 467; Herill v. Sizeland, 81 Ill. 457.

2. The trustee, having the option of permitting or determining Mrs. Bull's occupancy, and being under the duty of seeing that she complied with the conditions under which she held, was vested with such control over the property as to be responsible for a nuisance which it permitted to be erected: Wood's Law of Nuisances, 78, 141; Wood's L. & T., 618; Brown v. Railroad Co., 12 N. Y. 486; Irvine v. Wood, 51 N. Y. 224 (10 Am. Rep. 603); McCarthy v. Syracuse, 46 N. Y. 194; White v. Board of Health, L. R. 102 [? ?] Q. B. 219. Where the very existence of a thing constitutes a nuisance, a landlord is responsible; as in the case of a permanent erection impeding access to a public market: Thompson v. Gibson, 7 M. & W. 456; or a dangerous excavation near a highway: Rolle's Abr., Nuisance (K. 2); Irvine v. Wood, 51 N. Y. 224.

3. This erection was a nuisance. It was in violation of the ordinance of 1885, providing that the width of sidewalks should not be reduced by obstructions to less than 18 feet. Any encroachment upon a highway is a nuisance, whether it is actually dangerous to travel or not: Angell on Highways, § 223; Bacon v. Boston, 3 Cush. 174. It is not a question whether harm could come to any person by "the proper opening of the door." If the doctrine of Kies v. Erie City, 135 Pa. 150, be the law of Pennsylvania, a tornado may as well sweep away all the ordinances on the subject of nuisances.

4. The trust officer of the defendant, who "walked around there occasionally," evidently did so in discharge of the duties incumbent on the defendant with respect to the supervision of the property. His knowledge of the existence of the nuisance, acquired by inspection on those occasions, was the knowledge of the defendant. With that knowledge, the defendant was negligent in permitting it to remain, neither saying nor doing anything about it. And the defendant owed a duty, both to the estate of the testatrix and to the public, to see that no nuisance was maintained upon the premises.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was an action of trespass in the court below, brought by the plaintiff against the Pennsylvania Company for Insurance on Lives and Granting Annuities, trustee under the will of Jane Thomas. The plaintiff's cause of action was set forth in his statement substantially as follows:

On the night of November 7, 1888, the plaintiff was walking on the west side of Filbert street, towards Sixteenth street; that, when opposite the premises No. 1421 Filbert street, a door in a fence, which enclosed the steps in front of that dwelling, was suddenly thrown open outward by a lady; that he was struck violently in the breast by said door, and knocked down and seriously injured; that these premises had been the property of Jane Thomas in her lifetime; that said fence or wooden erection was a nuisance, because it extended outward seven feet from the building line, and because the door, when opened, extended into the sidewalk two feet four and a half inches, leaving only ten feet nine inches to the curb line; and that the defendants were liable by reason of the "negligence of the owners, trustees, employees, or agents, the defendants herein, in permitting the erection to be placed there."

It was among the undisputed facts of the case that the fence was within the legal line of obstructions, viz., four feet six inches, but that when the door was opened to its full swing it extended about ten inches beyond that limit; that the injury to the plaintiff was caused by the said door being suddenly thrown open; that the defendant company had nothing to do with putting up the fence; that its trust officer had noticed it in passing, but did not know when it was erected; that it had

no right to interfere, and never had interfered in any manner with the said property; that the same was in the possession of Sarah R. Bull, who held under the following clause in the will of her sister, Jane Thomas: "It is my will and direction that my house and lot, now No. 1421 Filbert street, in the city of Philadelphia, shall, at the value of $20,000, be deemed and taken as part of the one third of my residuary trust-estate, whereof my sister Sarah R. Bull has the income for life; and I authorize and empower my executors, until they shall decide it to be expedient to sell the said house and lot, to permit and suffer her, the said Sarah R. Bull, to occupy and use the same as a home for her, she paying the taxes thereon and keeping the same in repair at her own expense while she shall so occupy the same." It further appeared that the defendant company never interfered with the possession and enjoyment of the property by Mrs. Bull, but up to this time has allowed her to occupy it as a home.

Under this state of facts, the court below permitted a recovery of five thousand dollars against the company. Upon the trial, the learned judge negatived the defendant's point which prayed for a binding instruction in his favor, and charged the jury as follows: "I have decided that, as a matter of law, the defendant in this action is responsible for the injuries which the plaintiff suffered on that occasion."

I feel embarrassed in discussing this ruling. There are some propositions so self-evident that no strength can be added by elaboration or illustration. That the company, being a mere trustee, not in the occupancy of the property even by a tenant, and exercising no control whatever over it, can be held responsible in damages for this injury, is a proposition the mere statement of which carries with it its own convincing refutation. Aside from this, the accident did not result from the erection of the fence. That was harmless enough, and if in violation of the city ordinance, which does not clearly appear, was not necessarily dangerous or likely to injure any one. The proximate cause of the injury to the plaintiff was the throwing open of the door suddenly. It was not contended that this was done by the company, or by any agent, employee, or servant thereof. There is no room, therefore, to apply the doctrine of respondeat superior. The case bears a striking analogy to Kies *v.* Erie

Opinion of the Court.

City, 135 Pa. 144, in which the plaintiff was injured by the sudden swinging open of the doors of the engine-house, across the footwalk. We held that there was no evidence of a defective construction of the building, and that the sudden opening of the doors was the act of the city's employees, for which it was not liable. That the learned counsel for the plaintiff regards that case as a departure, I infer from the following language in his printed argument:

"If the opinion of the learned chief justice, as stated, be the law, then all the ordinances are a 'Babel of tongues,' and all the law as laid down a 'vain show of platitudes;' and along every highway and by-way not only may be constructed engine-houses, but stores and warehouses, and operate their doors by means of springs and bolts which open outward across every sidewalk in this city entirely across the street, so that the doors operated in this way shall stand as armed men on every highway where it suits private whims and caprices to have them; and, if such nuisances are to have the solemn sanction of the highest tribunal in Pennsylvania, then I submit that all the rights guaranteed to the citizen are at an end, and awnings, signs, door-steps, erections, frames, posts, poles, porches, porticos, benches, are to hold high carnival, without limit, upon the public highways in Pennsylvania."

Notwithstanding this prediction of the dire evils to be apprehended from the ruling in Kies v. Erie City, we adhere to the law of that case, and have no hesitation in applying its principle to the case in hand. Were we to sustain the doctrine now contended for by the appellee, it is within the bounds of reason to say that no one could safely act as a trustee in Pennsylvania.

Judgment reversed.