# King et ux. *v.* Darlington Brick & Mining Co., Appellant.

*Negligence—Master and servant—Minor—Illegal employment—Ordinary usage.*

1. Damages may be recovered for injuries to or the death of a minor, caused by doing work which was forbidden by statute, if he was directed or permitted by his employer to do it, even though he was employed for and was generally engaged in doing that which was not forbidden.

2. Ordinary usage which is in disregard of a statutory duty cannot be a test of negligence.

*Negligence—Evidence—Doubts—Jury not to guess.*

3. A jury will not be permitted to guess that negligence existed, but this does not mean that there must be evidence excluding everything which the ingenuity of counsel may suggest as possibly causing or contributing to an accident.   Doubts on the subject, if such there be, must arise fairly out of the evidence produced.

*Negligence—Evidence—Circumstantial evidence.*

4. While negligence must be affirmatively proved, it may be done by circumstantial evidence sufficient to satisfy reasonable and well balanced minds that it existed in fact, and that the accident resulted from it.

*Appeals—Binding instructions—Facts found by jury taken as established.*

5. In determining whether or not binding instructions should have been given for one of the parties to a suit, all the facts favoring the other party, and found by the jury to be true, must, on appeal, be taken as established.

*Evidence—Experts—Opinions—Witnesses.*

6. Men of sufficient practical experience regarding a particular subject, may give an expert opinion touching it, whenever expert evidence is permissible.

Argued October 5, 1925. Appeal, No. 100, March T., 1925, by defendant, from judgment of C. P. Beaver Co., Dec. T., 1923, No. 203, on verdict for plaintiffs in case of John A. King et ux. v. Darlington Brick & Mining Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death of plaintiffs' minor son. Before READER, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs for $4,738, on which judgment was entered for $3,000. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Harold F. Reed,* of *Reed, Leonard, Coghlan & Smith,* with him *J. Wilmer Martin,* for appellant.—There is no evidence to justify a finding by a jury that the deceased minor was employed to clean moving machinery.

The original employment of Edward R. King was lawful and it is not contended that the work he was doing prior to the afternoon of the day of the accident, such as hacking, etc., was in violation of any law of the State: Phila. City Pass. Ry. v. Henrice, 92 Pa. 431.

Negligence is not to be presumed nor ordinarily to be inferred except where the maxim res ipsa loquitur applies: Kissock v. Traction Co., 15 Pa. Superior Ct. 103.

The lawful employment of the deceased minor at the pug-mill was not rendered unlawful because some puggers occasionally cleaned the sides of their moving mills when the cleaning was merely incidental to the employment: Lenahan v. Coal Co., 218 Pa. 311; Johnson v. Mfg. Co., 282 Pa. 322.

*W. W. Braham,* of *Aiken & Braham,* for appellee.—There was competent evidence from which the jury might

conclude that the minor child of the plaintiffs met his death while cleaning machinery in motion: Dannals v. Twp., 255 Pa. 156; Tucker v. Ry., 227 Pa. 66; Weinschenk v. Phila. Home-Made Bread Co., 258 Pa. 98; Flucker v. Steel Co., 263 Pa. 113; Biesecker v. R. R., 276 Pa. 87; Derrick v. Electric Co., 268 Pa. 136.

The question whether Edward R. King was, at the time of his death, engaged in cleaning the pug-mill while it was in motion, was properly submitted to the jury: Com. v. Zappe, 153 Pa. 498; Johnson v. Mfg. Co., 282 Pa. 322; Kennedy v. Rothrock, 261 Pa. 580; Doud v. Hines, 269 Pa. 182; Chilwood v. Ry., 275 Pa. 22; McCormick v. Bickerton, 251 Pa. 466.

The question whether defendant had performed its full duty to guard the pug-mill, if it were a dangerous machine, was properly submitted to the jury: U. S. Horseshoe Co. v. Express Co., 250 Pa. 527; Schwartz v. Caplan, 256 Pa. 239; Jones v. Caramel Co., 225 Pa. 644.

OPINION BY MR. JUSTICE SIMPSON, November 23, 1925:

Defendant appeals from a judgment, entered on a verdict for plaintiffs, in a suit to recover damages for the death of their minor son, which they aver resulted from his being permitted to work at cleaning unguarded moving machinery, in direct violation of the statutes on the subject. At the time of his death, the boy was seventeen years of age, and the work he was employed to do was not of the forbidden character; which fact, defendant alleges, is sufficient, under Johnson v. Endura Manufacturing Co., 282 Pa. 322, to prevent recovery here. In that case, as in this, the character of the general employment was allowable; but there the minor, though sometimes permitted to work at the forbidden part of defendant's business, was in fact injured while engaged in doing that for which he could legally be employed; while here, if plaintiff's contention is sustained, the boy's death was caused while he was actually working on a machine in violation of the applicable statutes. Admittedly, he was

then operating a pug-mill in motion, as he was directed by defendant's mill-foreman to do, and his death was caused by his being cut and hacked by unguarded revolving knives, which were an integral and necessary part of the mill. The above stated distinction between Johnson v. Endura Manufacturing Co., supra, and the present case, is vital; and hence—still assuming plaintiff's contention to be correct—that case does not stand in the way of recovery here; on the contrary, the rule applies that the Workmen's Compensation Act does not debar an action of trespass, where the injury results from the employer's violation of a statutory command: Lincoln v. National Tube Co., 268 Pa. 504.

Plaintiffs' claim is based upon the Acts of April 29, 1909, P. L. 283, and May 13, 1915, P. L. 286. The first and fourth sections of the former statute, when taken together, provide that "No minor under the age of eighteen years, [which deceased was] except as hereinafter provided, shall be employed, permitted or suffered to work in, about or for any factory, workshop, etc......[but] that minors over the age of fourteen years, who can read and write the English language intelligently, and are physically qualified [all of which this boy was] may be employed......in any factory, workshop, etc., ......in which power machinery is not used, or, if used, that the same, and all other dangerous appliances used, are kept securely and properly safeguarded." Section 5 of the Act of 1915 provides that "No minor under eighteen years of age shall be employed or permitted to work ......in cleaning machinery in motion."

Of course, when the boy was assigned by defendant's mill-foreman to work on the pug-mill while in motion, and did so work, he was, within the purview of those statutes, "suffered to work" or "permitted to work" on it. This being so, the next questions in due order are: (1) Was the machine "securely and properly safeguarded"; (2) if not, could it have been, without seriously interfering with its operation; (3) was it custom-

ary or necessary to clean the mill while it was in motion, in order to operate it satisfactorily; and (4) was the fact that it was thus being cleaned known to those in charge of defendant's plant? The jury found all these facts in plaintiff's favor, with ample evidence to support the findings; hence they must be taken as established for the purpose of this appeal; Mountain v. American Window Glass Co., 263 Pa. 181; McDonald v. Pittsburgh, 278 Pa. 485. Unless, therefore, there was improper evidence admitted, or proper evidence excluded —neither of which points are raised by the assignments of error—or unless the manner of submission was improper, the judgment must be sustained, if—and this was the principal question in the case—there was sufficient evidence from which the jury could properly have found, as they did, that the boy's death was caused by his falling into the machine while cleaning it, or because it was not "securely and properly safeguarded."

Accepting the truth of the evidence which was favorable to plaintiffs, the pug-mill and its method of operation may be stated as follows: The machine consisted of a U-shaped steel trough, about twelve feet long, thirty inches across the top and twenty-eight inches deep. It was erected on a platform, which was eight or ten feet above the floor and some thirty-four inches below the top of the trough. A shaft, containing knives about ten inches long, placed three or four inches apart, ran through the middle of the trough, the shaft turning, when the machine was in operation, at the rate of twenty-four revolutions per minute, and the ends of the knives then reaching to within two inches of the side of the trough, and from three to five inches of its top, which top was open and unguarded. From a chute arranged above the trough, clay and water ran into it, and were kneaded or churned together by the knives, so that the resulting mixture should be of the proper consistency for the manufacture of the bricks, which were thereafter to be burned in the kilns; the knives being arranged, like

a screw conveyer, to push the mixture to the opposite end of the machine. The principal duty of the operator of the mill was to see that this mixture was of the right consistency, for which purpose he was constantly compelled to feel the clay, unless he was an expert pugger, which plaintiff's son was not. One of defendant's own witnesses testified that it requires "particular skill or ability to operate a pug-mill," and hence it should only be run by "a man really......experienced."

In the course of operation, some of the clay would stick fast to the sides of the trough, both on that nearest to the platform where the pugger was, who operated the machine, and on the opposite side—necessitating, in the latter event, a leaning over the revolving knives—the clay thus clinging to the trough sometimes extending a number of inches over the moving mixture, especially when the knives had been worn short by use, as they constantly were. The adhering clay had to be removed, sometimes as often as two or three times an hour, to enable the operator to make sure that the mixture was of the right consistency, and its removal was effected by the use of a sharpened steel bar, which, for convenience, was kept near the machine. It was disputed whether this bar was intended to be and was used while the machine was in operation; there was abundant evidence that it was, and the verdict of the jury so determined.

On the morning of the day of the accident, the machine was in charge of the usual pugger, but as he was absent in the afternoon, the minor was, as stated, directed by defendant's mill-foreman to operate it. After the work commenced, the boy was repeatedly seen moving up and down the platform, and looking into the trough, with the cleaning-bar in his hand; the last occasion being a few minutes before his death. No one saw him fall into the machine, but subsequently he and the bar were both found in it, his body cut and slashed by the revolving knives, and the bar twisted and bent. Because there was no evidence as to how he fell in, defendant con-

tends that it may not have occurred while he was cleaning the machine, and suggests several other possible explanations. For instance, it is argued that because a shoe was found on the platform after the accident, he might have been doing something to his feet when he fell in; but it was not shown that it was his shoe, or that either of his feet was unshod when he was taken out of the machine. So, also, it was said that possibly he may have become fascinated by the moving blades and lost his balance, though he had operated the machine several times before, without any such disaster happening. Other improbabilities were also suggested, to all of which we may repeat what we said in Biesecker v. Penna. R. R. Co., 276 Pa. 87, 90: "True, it would have been error to permit [the jury] to guess that negligence existed; but this does not mean, as appellant seems to think, that the testimony must exclude everything which the ingenuity of counsel may suggest as possibly having caused or contributed to the accident. Such doubts, if any there be, must fairly arise out of the evidence produced, and those intimated do not so originate."

Of course a jury's verdict will not be sustained, if founded upon a guess, or if the evidence discloses facts which give a different and as reasonable an explanation of the cause of the accident as that upon which a plaintiff depends for recovery; but this, since the jury's verdict, has no applicability to the present case, nor does it modify the other rule that, if the only reasonable conclusion is that the injury resulted from the cause upon which plaintiff relies, a recovery may be had though there was only circumstantial evidence to establish it. We said in Dannals v. Sylvania Township, 255 Pa. 156, 160: "As to whether there was sufficient proof that the death of plaintiff's husband resulted from the negligence of defendant, the case at bar falls within the principles stated in Ferry v. Philadelphia Rapid Transit Co., 232 Pa. 403, where it was said (p. 405): 'In actions of this character, there

must of course be affirmative proof of negligence, before recovery can be had. But it is not always essential that there should be an eyewitness of the occurrence. The proof may be furnished by the circumstances themselves. The test is whether they are such as to satisfy reasonable and well balanced minds that the accident resulted from the negligence of the defendant. The discussion of this principle by Judge AGNEW, in Allen v. Willard, 57 Pa. 374, is instructive. The doctrine there laid down was cited with approval and applied by our Brother STEWART in the late case of Tucker v. Pittsburgh, Cin., Chicago and St. Louis Ry. Co., 227 Pa. 66, where he said, with reference to the facts then before him, 'No one witnessed the occurrence, and, therefore, no one can testify how it did actually happen. The case is not very peculiar in this respect. Accidents in which life is lost not infrequently occur unwitnessed. Such fact in itself does not operate to protect one whose negligence can be shown, from the general situation and circumstances, to have been the operative cause. When these are such as to satisfy reasonable and well balanced minds that the accident resulted from the negligence of the party charged, liability attaches.' " There are many other cases to the same effect among which, as shown by Flucker v. Carnegie Steel Co., 263 Pa. 113, 118, are Phila. & Reading R. R. v. Huber, 128 Pa. 63; Henderson v. Continental Ref. Co., 219 Pa. 384; Millum v. Lehigh, etc., Coal Co., 225 Pa. 214; McManamon v. Hanover Twp., 232 Pa. 439; Madden v. Lehigh Valley R. R. Co., 236 Pa. 104, and Weinschenk v. Phila. Home-Made Bread Co., 258 Pa. 98.

A careful consideration of all the evidence leads us to the conclusion that the court below was justified in submitting to the jury the question as to whether or not the boy lost his life while cleaning the moving machine. When last seen, just before the accident, he was carrying the bar which was used for that purpose, and it was found, with his dead body, in the trough. There is nothing in the evidence which suggests any other reasonable

theory than that, while using the bar for the purpose for which it was intended, he and it fell into the machine. As already stated, there was ample testimony to show that defendant's executive employees must have known the bar was constantly being used to clean the mill while in operation, and the jury's finding to that effect is conclusive on this appeal. Indeed, the mill-foreman, who says he instructed the boy how to use the machine, refused to say that he gave any advice on that subject.

The court below also submitted to the jury the question as to whether or not defendant breached its duty in not having the top of the machine guarded, and since we cannot know upon which point the case was decided by them, we must consider this also. There was evidence for and against the proposition that it could easily have been guarded, without affecting its beneficial use, and the jury have decided it could have been. Upon this branch of the case, defendant's entire contention was based on the allegation that it could not have been so guarded (as see its fifth point, hereinafter quoted), and the further averment that there was no evidence that, at the time of the accident, it was customary, in the trade, to place guards over such machines. There was no such testimony; but, customary use, while a matter to be considered, is not conclusive as against the positive command of a statute; especially where, as here, it required no expert knowledge to know that it was dangerous to select an inexperienced minor to operate such a machine, and, if defendant's testimony as to the only work required of a pugger be true, it could have been "securely and properly safeguarded" by bars running parallel with and above the trough, sufficiently far apart to enable the pugger to see, and, if necessary, feel the mixture of clay and water, in order to ascertain whether it was of the proper consistency, and to reduce or increase the flow of water, or to throw more on, whenever necessary so to do. If such a guard had been on the machine, the accident here complained of could not have happened.

In Jones v. American Caramel Co., 225 Pa. 644, 650, it is said, when considering a similar statute: "It is to be assumed that the fan was in place in compliance with the requirements of section 11 of the Act of May 2, 1905, P. L. 352. Another requirement of that same section is that 'machinery of every description shall be properly guarded,' and the defendant is not to be relieved from the charge of negligence because, as its learned counsel contend, the plaintiffs failed to show that it was customary in factories to place guards or screens over revolving fans. The legislative mandate is that machinery of every description shall be properly guarded, and customary disregard of this is but customary negligence, rendering everyone guilty of it responsible for the consequences resulting directly and solely from it. Ordinary usage which is in disregard of a statutory duty cannot be a test of negligence." This conclusion has been followed repeatedly, perhaps the latest case being Walcofski v. Lehigh Valley Coal Co., 278 Pa. 84. As already stated, defendant's contention at the trial was epitomized in its fifth point, as follows: "With respect to guarding the machine, the question for your determination is, was it practical at the time of the accident, by the exercise of ordinary care, to safeguard the machine so as not to seriously interfere with its operation, and should the employer have known of the guard which would perform that service." This point was affirmed, but the jury found the essential facts against defendant's contention.

We can see no objection to the admission of the evidence of a practical pugger—which was objected to and argued, but not assigned as error—who had operated similar machines, and who testified how the guarding of the machine not only could have been but elsewhere was safely accomplished, without detriment to its operation: Schaeffer v. Phila. & Reading R. R., 168 Pa. 209; Sorenson v. Quaker City Poster Advertising Co., 284 Pa. 209.

In view of what has been said, it is not necessary to consider the assignments of error in detail. Aside from those which grew out of the court's refusal to give binding instructions for defendant, they object only to specific portions of the charge, which, when considered in its entirety, is not only unobjectionable, but is in reality a comprehensively clear and accurate statement of the facts and the law applicable thereto.

The judgment of the court below is affirmed.