## Slakoff, Appellant, *v.* Foulke, Trustee.

Argued April 28, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

354

*Peter P. Zion,* with him *Albert H. Friedman,* for appellant.

*Charles E. Kenworthey,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 26, 1936:

This is an appeal from the refusal of the court below to take off a nonsuit in an action of trespass.

Sidney Slakoff, aged twenty-two years, son of the plaintiff, was fatally injured in an elevator shaft in Philadelphia on October 27, 1933. The plaintiff was dependent upon him for support and maintenance. He was employed by A. Gordon & Sons, confectionary jobbers, who occupied the first floor and basement of a five-story building. The other floors were occupied by other tenants.

On the morning of the accident this young man arrived for work about eight o'clock. Shortly thereafter, he and another employee, named Williams, went to the basement of the building to bring up certain merchandise. Williams started the elevator from the first floor and sent it down to the basement. He and Slakoff walked down. They assembled various cartons upon a small truck for the purpose of loading them on the elevator to be carried to the first floor of the building. Williams then went outside, leaving Slakoff alone. Shortly afterwards cries of help were heard. Slakoff's body was found wedged between the floor of the elevator and the landing at the second floor of the building with his head, shoulders and arms above the elevator floor and the rest of his body hanging downward into the elevator shaft. He was unconscious at the time and died shortly afterwards at the hospital.

The plaintiff brought action against J. Roberts Foulke, surviving trustee under the will of Charles M. Foulke, deceased. He was described in the pleadings as the owner and in possession and control of the building in question. The negligence charged was that the de-

fendant failed to equip and maintain the gates of the elevator with automatic door locking devices on the various floor landings throughout the building; that he failed to maintain a proper bell signal system from and between several floors of the building in a safe and proper manner; that he maintained a defective cable locking device upon the elevator; that he maintained a control device upon the elevator not provided with a proper form of lock to enable persons operating the elevator to hold the same immovable while loading and unloading freight; and that he failed to provide sufficient illumination in the elevator shaft.

The court below granted a nonsuit on two grounds; first, that for any cause of action arising through the negligence of an executor or trustee in managing an estate, such executor or trustee is personally liable and the action must be brought against him in his individual capacity, citing *Braman's App.*, 89 Pa. 78, and *Eisenbrey v. Pa. Co.*, 141 Pa. 566, 21 A. 639; secondly, on the ground that there is not sufficient proof of negligence. On this latter point the court said: "There is evidence in the case at bar that the signal bells did not operate at the time of the inspection, which was some time after the accident resulting in the death of plaintiff's son . . . there is no evidence, however, that the bells were not in order and working when the deceased operated the car earlier in the day, before the accident; there is no evidence whatever that the failure of the bells to work contributed in any way to the accident. No presumption of negligence arises from the mere happening of the accident."

Appellant's paper book contains the following statement: "The theory under which this case was tried was that the decedent had loaded the freight upon the elevator, started on his journey from the basement to the first floor, set the safety locking device so that the elevator would automatically stop at the first floor; that the elevator did not stop and as the decedent was about to

unload the packages which he was transporting, the elevator started upward and he was crushed to death. The evidence with respect to the condition of the safety locking device was that the elevator could be moved from the first floor, even though the lock was set, by a person reaching into the shaft on an upper floor and pulling the cable. This is a reasonable inference which may be drawn from the circumstances in this case."

The weakness in this contention is that it postulates a mere theory as to how the accident happened. The only facts produced were so inconclusive as to the proximate cause of the victim's death that in law the jury cannot be permitted to draw from them the conclusion of defendant's legal responsibility. There is a surmise but no proof, that the deceased "set the safety locking device so the elevator would automatically stop at the first floor," that the elevator did stop at that point, that as the decedent was about to unload the packages the elevator started upward, that some person on an upper floor reached into the shaft and pulled the cable thereby starting the elevator. The presumption that the decedent exercised due care negatives any allegation of contributory negligence, if such had been made, but it does not relieve the plaintiff of the duty of establishing the negligence charged. See *Fonzone v. Lehigh Valley Transit Co.*, 318 Pa. 514, 178 A. 671.

The plaintiff called as a witness her brother, who was a consulting engineer, and who had charge of the maintenance of elevators in a building in Philadelphia for several years. This witness examined the elevator and elevator shaft in question at 3 : 30 on the afternoon of November 1, 1933, five days after the accident. He testified that the bell, whose function was to indicate that the elevator was about to move, did not work on any floor. He said that while standing on one of the floors he lifted the gate, "The lock would not hold it; I was able to reach in and grab the cable and pull the cable and the elevator came to my floor." He stated that he

did that on every floor, adding: "I had to jerk pretty hard, but with a good jerk it came through." The elevator shaft was described as being ninety feet high from the first floor, and the light in the shaft as dim. The witness declared that the cable locking device did not grasp the buttons on the cable, and that this condition was not recent, but old. He was asked: "When the car got to the first floor didn't it automatically lock?" He answered: "Yes, that feature of the car worked. In other words, if you set the lock and then waited for the car to stop when it reached a certain floor, that feature worked, because then the pull on the cable was not sufficient to pull itself through the lock. But if somebody reached, or if I reached in, from one of the upper floors, lifted the gate and leaned in over the shaft, grabbed the cable and gave it a good jerk, I could pull it through."

Though the plaintiff produced evidence that the elevator and the elevator shaft and equipment were in an improper condition of maintenance, there is still wanting a necessary causal connection between this fact and decedent's fatal injuries.

Appellant cites *Sturgis v. Kountz*, 165 Pa. 358, 30 A. 976. That was an accident for the death of a horse on a ferryboat. The horse became frightened by a whistle sounded on another boat, and backed through a defective guard rail. There was no question as to how the horse's death was occasioned. The only question for the jury was that of the negligence of the ferryman in not maintaining a proper rail, and the contributory negligence of the owner of the horse in not holding him.

Appellant cites *Strobel v. Park,* 292 Pa. 200, 140 A. 877. There decedent was a passenger in an elevator owned and operated by the defendant. The elevator was not provided with an entrance door or other guard on the side toward the entrance. The deceased fell forward and was struck by the side of the door projecting toward the elevator shaft. Both the court below and this court held that the plaintiff had made out a case by showing

the defendant failed in its duty to its passengers in not equipping the elevator with appliances actually used by men of judgment and common prudence who maintained and operated other elevators. In that case there was no question as to how the deceased met his death. It was *directly attributable* to the lack of proper safeguards. In the instant case there is no direct chain of cause and effect between the negligence charged and the death attributed to it. In the case just cited this court said: "The burden was on plaintiff to show that death was due to the negligence of defendant and not to some internal affliction. If there is any other cause to which, in equal fairness, the injury may be attributed, the jury will not be permitted to guess which condition occasioned the injury: *Fredericks v. Atlantic Refining Co.*, 282 Pa. 8, 15, 127 A. 615. But the test is whether the circumstances are such as to satisfy reasonable and well-balanced minds that the accident resulted from the negligence of the defendant: *King v. Darlington Brick and Mining Co.*, 284 Pa. 277, 131 A. 241." We think that to this might well be added this qualification: the circumstances must be such as to satisfy the reasonable and well-balanced minds of those sitting as jurors in the case, whose sworn duty it is to render a just verdict on the evidence, as between plaintiff and defendant, and to keep in mind that the burden rests upon a plaintiff to prove his or her case by a fair preponderance of the evidence. Justice AGNEW in *Allen v. Willard*, 57 Pa. 374, introduced into our decisions the phrase "reasonable and well-balanced minds," but in the same opinion he said: "It cannot be denied that actions for injuries arising from alleged negligence, not founded upon a contract or undertaking for safety, as that of a carrier, must be supported by affirmative proof of the fact of negligence." He added that "this proof may be furnished by the very circumstances themselves." Since he was discussing the trials of negligence cases, it is fair to assume that he meant that jurors should not be permitted to guess that

a death or injuries resulted from a defendant's negligence, if established, but that before finding a verdict in plaintiff's favor they as reasonable and well-balanced jurors must be convinced by the fair preponderance of the evidence of the truth of plaintiff's charge.

The case cited by the appellant, and which is closest in its facts to the instant case, is that of *Ferry v. P. R. T. Co.*, 232 Pa. 403, 81 A. 426. Plaintiff's decedent, who was a foreman of laborers, was found crushed under a freight elevator. No one saw the accident and there was no evidence as to how he happened to be caught under the elevator or what he was doing there. The trial judge entered a nonsuit. This court reversed the court below, saying: "There were no guards to prevent people from passing into the space under it, when the elevator was raised. No gong was provided, nor was there any other device to give notice when the elevator was descending. The evidence showed that the only way such notice was given was by some one on the elevator calling out, as it came down, 'Look out at the bottom.' The elevator was operated by electricity, and ran very quietly. The plaintiff showed by a city inspector, that he had inspected this elevator on January 14, 1907, and had reported it should have a gong attached to it, in order to warn persons below when it was about to descend. . . . Expert witnesses testified that an elevator such as this, uninclosed and without gong or rope attachment, was not a reasonably safe device or apparatus. One witness testified that among the trade such an elevator would be called a 'trap.' . . . Between the place where the men were working, and the opening in the wall, where the elevator was located, there was a pile of rails, fifteen or twenty feet high, which prevented the workmen from seeing the place. There was no load on the elevator, nor was any person on it, when Ferry (the deceased) was discovered. He was found fastened between the elevator and the iron bar across the opening in the wall. According to one witness he appeared to have been actually under the plat-

form of the elevator, and had tried to get out. Presumably the deceased was acting in the discharge of his duty as foreman of the laborers at the time. . . . Something called him to the opening or doorway through the wall. It is a fair inference that while there, the elevator, operated by electricity, and moving quietly, descended unnoticed upon him and caught him."

The difference between the facts of that case and the facts here are obvious. It was a legitimate inference that the fatal accident in that case arose from the fact that at or near the point where the victim was at work the defendant permitted the operation of a quietly-moving elevator unequipped with any signals to warn persons it was about to descend. The case in its facts might be compared to one where a workman is killed at a dangerous and unprotected railroad crossing at which there are no warning signals at the crossing or from an approaching train, and where it is clear that the workman's death resulted from the railroad company's neglect of duty in maintaining a "grade crossing trap." In the case at bar the plaintiff's son was undoubtedly killed by a moving freight elevator, and there was proof that this elevator was not properly equipped with modern safeguarding devices, but to make out her case the plaintiff had to support a third averment, to wit, that "some person on an upper floor pulled the cable," thus starting the unsecurely-locked elevator while the decedent was engaged in the performance of his duties. There was no proof of the existence of such hypothetical person, and no proof of facts from which an inference could logically be drawn that the hypothetical person did what the plaintiff argues must have been done.

The happenings immediately leading up to the decedent's death are unknown. The conjecture advanced by plaintiff may be well founded in fact, if the facts were disclosed, but all we have here in legal contemplation is that the unfortunate young man's death was caused by the movement of an elevator not adequately safe-

guarded by mechanical devices. That his death was attributable to the lack of such safeguards does not appear by either direct or circumstantial proof. The absence of such proof is fatal to plaintiff's case.

The court below correctly held that there was not sufficient evidence of defendant's negligence to warrant its submission to the jury. The court below also correctly held that the defendant was not sued in his individual capacity and that the words "Surviving Trustee, under the Will of Charles M. Foulke, Deceased" were not merely descriptio personæ and surplusage. Furthermore, since the statute of limitations had run at the time of trial, the court properly refused to treat the action as one against defendant in his individual capacity.

The judgment is affirmed.