WILLIAMS AND HITCHCOCK VS TAYLOR.

*As to actions to recover the value of a slave, killed on board a boat, where hired.*

1. The strict rule now recognized in relation to the responsibility of carriers of *goods,*—does not apply to a conveyance of slaves.

2. The owner of a steam-boat, who employs a slave thereon, is only liable to the owner of the slave, in the event of his being killed, for gross negligence.

3. Where the owner of a slave, who hires him upon a steamboat, at the time clearly knows of defects existing in such boat,—he assumes the risk of such accidents and injuries as may occur therefrom.

4. Trustees, authorised to receive the profits of a steam-boat, on which a slave is hired, are not liable for injuries to such slave, while on such boat,—it not appearing that they had a right to the possession of the boat, at the time of the injury.

5. Nor will the acts of one Trustee, without proof that they were authorised by the other, fix the liability of both in such a case.

In this case, Henry W. Taylor, prosecuted an action of trespass on the case, in Mobile Circuit Court, against Nathaniel F. Williams and Henry Hitchcock, for the recovery of the value of a negro man, slave, who had been hired on board a steam-boat, of which the defendants were charged to be owners; and which slave had been killed, as was alleged, through the carelessness and mismanagement of the agents and servants of the defendants. And the defendants plead the general issue—upon which judgment was given upon a verdict, in favor of the plaintiff.

' On the trial, the plaintiff, in support of his action, proved, that the slave, to recover the value of whom, he commenced suit, was of his property, and had been hired by the plaintiff's agent, to one George Davis, who had previously owned the steam-boat Little Erie; and that the said slave was employed on the said boat in the capacity of steward: that Williams, one of the defendants, on being informed of said hiring, assented to it: that Williams had hired the clerk, and hands on said boat, or directed them to be hired, but that he told the clerk, at the time, that they must look for pay, to the profits of the boat, and her earnings. It was further in proof, that said boat had been conveyed by said George Davis, to the defendants, as Trustees—so that they might receive the profits of said boat during a certain period, and then sell her, and apply the proceeds to the payment of several judgments and debts due by the said George Davis: that the deed of trust was upon record; and that after the trips of said boat, the books, accounts and monies, were handed over to said Williams. It was proved, that the slave was killed while the boat was ascending the river, after the making of the deed of trust—as supposed, by slipping and falling into the pit of the fly wheel of the boat, as she was running, and as he was passing. The plaintiff relied upon the fact, that the fly wheel was not sufficiently protected by strips or slats nailed across posts, or uprights in the frame, oh each side of the fly wheel—the posts being there, but the slats being off. Several captains and pilots testified, that it was customary to have these slats—and that it was very unusual to run a boat without them—it be-

ing dangerous. It was also in proof, that the boat was in the same condition when the slave was hired, as when killed.

Upon these facts,—the Court charged the jury, that if they believed there was negligence in the defendants, in running the boat, without slats; and that by reason thereof, the said slave was killed: and if the defendants caused the boat to be run, and hired hands for her—receiving the proceeds—that they assented to the hiring of the said slave,—then the defendants were liable, although they were but trustees.

The Court further charged,—that the owner of the slave was not bound to enquire into the situation of the boat at the time he hired the slave; and if the boat was wholly unsafe, by reason that the fly wheel was not protected, and that the boat was thus used, —then there was such negligence as would make the defendants liable.

The Court was asked to instruct the jury, that negligence alone, was not sufficient to charge the defendants—that it should also appear that there was no negligence on the part of the slave: that there was a distinction between slaves, and other property—the law requiring slaves to take reasonable care of themselves.

Also, that if the slave was hired to Davis, the owner of the boat, and was employed under a contract with him, he not being agent of the defendants —the plaintiff should look to him.

Also, that if when the slave was hired, the boat was in the condition, as when he was killed, and the situation of the boat was known,—the risk of acci-

dent was assumed by the plaintiff. All which instructions the Court declined to give.

Bill of exceptions, and writ of error.

*Stewart* for plaintiffs in error.
*Gordon* and *Goldthwaite*, contra.

HOPKINS, J.—This is an action of trespass on the case. It was brought by Taylor, in the Circuit Court of Mobile county, against the plaintiffs in error, as the owners of a steam-boat.

The object of the action was to recover the value of a negro man that belonged to Taylor, who, as it is stated in the declaration, had been employed as a steward on the boat, and during such employment was killed, from the carelessness of the agents and servants of the owners.

Upon the trial of the cause, a bill of exceptions was taken by the defendants to the action, from which it appears, that the slave was killed, as it was supposed, by slipping and falling into the pit of the fly wheel of the boat; and the negligence relied on, to make the defendants liable was, that the fly wheel was not guarded by strips, nailed across posts in the frame, on each side of the fly wheel—the posts having been in the frame, without any strips.

From the bill of exceptions, it appears also, that the boat was in the same condition, when the employment of the slave commenced, as it was when he was killed, and that captains and pilots of steam-boats deposed, it was customary to have strips; that they never knew a boat without them, and it was unsafe to run one without them.

From the instructions which the Court gave to the jury, we understand, it was the opinion of the Court, that any degree of negligence makes owners of boats liable for the injuries suffered by their agents and servants, while they are engaged in the business they had undertaken to do on a boat.

* It was anciently held, that a carrier of goods, for hire, was responsible only for ordinary neglect.— This rule, so far as it related to the conveyance of mere goods, was changed long since; but the strict rule upon the subject, which is now recognized, does not apply to the conveyance of slaves as passengers, by a carrier for hire; as the Supreme Court of the United States decided, in the case of *Boyce* against *Anderson.** For such passengers, a carrier is liable only for ordinary neglect. In that case, it was determined also, that if slaves paid no hire for their passage, the carrier would be responsible only in a case of gross neglect. A less degree of negligence makes a carrier liable to a passenger, who has, or is bound to pay his hire, than is required to make him responsible to one, from whom he is to receive no reward. It must require as great a degree of negligence to make an owner of a boat liable to an agent, or a servant, engaged in business on his boat, as it would to give a right of action against him, to a passenger, who was bound to pay no reward for his passage. Neither such a passenger, nor a servant, who is hired to do business on a boat, pays any reward for his passage. By the engagement of such a servant, were he a free man, he would incur an obligation to go on the boat, and acquire a right to be there, and for his services while there, would be entitled to com-

*2 Peters, 150.

pensation; but for his passage he would pay nothing.

In this view of the case, if the servant be a slave, his owner would be entitled to the compensation for his services, and the owner of the boat would be liable to the master only, for the degree of negligence, which would make him responsible to the servant, if he had been a free man, and had suffered an injury, which did not cause his death. In such a case, a carrier is liable only for gross negligence, which is defined to be the want of slight diligence, or a failure in the lowest degree of prudence, or an omission to exercise the diligence, which men, habitually careless, or of little prudence, generally take in their own concerns.[*]

[*]Story on Bailments, 12.

The instruction of the Court to the jury, that if they believed there had been negligence, without specifying the degree of it, the defendants to the action were liable, was erroneous. But we do not think the rule, which regulates the liability of a carrier to passengers, who pay no reward for their passage, is applicable to the case of an agent, or servant, who is a free man, and knows when he enters into an engagement with a carrier, that the seat of the coach, which he agrees to drive, is without a railing, or that the coach itself is unfit to be used; or, that there is a defect in a boat, which must be a source of danger to him, while he shall pursue the business, that he undertakes to do. The agent, or servant, takes upon himself the risk of accidents and injuries from causes, of which he has knowledge. He acquires a right by his contract, to go on the boat, and to compensation for the business he may do there, and knows when

he enters into his engagement, that he will be exposed to danger while he shall be employed in earning his wages. The carrier exposes himself to the peril for the purpose of earning freight, and the prospect of gain induces the agents and servants to incur the same hazard. But the only object of a passenger of any description, is, to be carried safely. If the servant be a slave, and the master, or his agent, who made the engagement for the servant, knew, when he entered into it, of the defects in the boat, the same rule is applicable, which would apply, were the servant a free man, and had made the contract himself. But as it does not clearly appear, from the record, that Taylor, or his agent, who hired the slave on the boat, knew of the defect in it, when the contract was made, the judgment would not be reversed, for the refusal of the Court to give the instructions, which were asked upon this point.

From the bill of exceptions, it appears, that the boat had been conveyed to Williams and Hitchcock, as trustees; they had power to receive the profits for a limited time, and at the expiration of the period, to sell the boat, and apply the proceeds of the trust fund to the payment of several debts due from one George Davis, who created the trust; was the former owner of the boat, and to whom the slave was hired. But it does not appear, whether the trustees had a right to the possession of the boat before the day when they would be authorised to sell, and when the slave was killed. If, at the time of the death of the negro, they had no right to the possession of the boat, they are not liable in any event. The fact stated in the bill of exceptions, that after Davis hired

the slave, Williams assented to it, has no effect if the trusteees were not entitled to the possession of the boat; he assented to what he had no power to prevent. If Williams hired other hands, when he was not entitled to the control of the boat, the fact does not affect a case, which has no relation to the hands he did hire. In no event can the acts of Williams affect Hitchcock, without proof that the latter authorised them. Trustees have all equal power, and ought to unite in their acts. They can not act separately, so as to charge each other.* [*2Fonb.E. 181.]

The last point which we have noticed, was argued and has been examined, because the case must be remanded; but it need not arise on a future trial, if it should be proved, that Taylor, or his agent, knew of the defect in the boat, when the slave was hired to Davis.

Let the judgment be reversed, and the cause remanded.

HITCHCOCK, C. J.—Not sitting.