THE CITY OF DENVER ET AL., APPELLANTS, v. SOLOMAN, APPELLEE.

1. NONSUIT—WHEN JUSTIFIED.

In order to justify the court in withdrawing a case for damages from the jury, the facts should not only be undisputed, but the conclusions to be drawn from those facts indisputable.

2. SAME.

It is only where the circumstances in an action for damages are such that the standard of duty is fixed and the measure of duty defined by law and is the same under all circumstances, that the court can withdraw it from the jury.

3. CONTRIBUTORY NEGLIGENCE A QUESTION OF FACT.

Questions of contributory negligence are for the jury, and are to be determined by the facts and circumstances of each case.

4. PRACTICE.

A fact admitted by the pleadings need not be proved.

5. SAME.

An objection on the ground of nonjoinder of a party cannot be raised for the first time in this court.

6. SAME.

A party cannot assign as error an instruction given at his request.

7. ALLEGATION AND PROOF.

In an action for damages against the owner of premises for injuries sustained by reason of a nuisance thereon, the allegation of ownership is sustained by proof of a tangible and defined interest united with the control of the property, notwithstanding the legal title may be in a trustee.

*Appeal from the District Court of Arapahoe County.*

CERTAIN premises on Wazee street in the city of Denver are alleged to have been rented and used as livery and sale stables; Emily Middleton is alleged to have been the owner;

Lesher and Walker, lessees, in the possession and use of the property. The building was a large structure with basement, the front for the entire length being on the line of the street. In front of the building within the line of the street, extending along the front of the building, on each side the center of it, was an excavation or pit for access and light to the basement, such pit or excavation extending nearly the entire length of the building, being about five feet in width and three and one half feet in depth. There was some testimony showing that at some former time the pit was protected by some kind of a railing, but that it had been broken down or removed long previous; that there was no rail or protection of any kind when lessees went into the occupation of the premises January 1, 1889, and the condition remained the same. Across the opening and extending from the office door out on to the sidewalk was a short flight of steps, five or six in number and four feet in width—to that extent bridging the pit which was open and unprotected on each side; again, a short distance off was a bridge or driveway near ten feet in width to the doors of the building, bridging the excavation; aside from this the excavation was open, there being three different pits or openings made by the bridges, respectively, four feet, five feet, and twenty feet in length.

On the evening of Sept. 20, 1889, at about 8 o'clock, Soloman (appellee) drove into the yard, left a horse to be cared for, passed through the barn from rear to front, went out at the main door upon the carriage bridge or driveway crossing the opening, turned to the left too soon, walked off the end of the bridge, fell into the hole, and received serious personal injury; brought suit against appellants for damages sustained. Trial was had to a jury resulting in a verdict and judgment for $841. The nature and extent of the injuries received by appellee were established by competent evidence and appear to have been practically conceded. No question is made in regard to the amount awarded by the jury as damages, hence, these questions are not involved. The complaint is in the ordinary form, alleging the injury, negligence

of the city of Denver, Emily J. Middleton as owner, and the other defendants as lessees, in allowing the pit to remain unprotected. Certain allegations of the complaint will require notice in the discussion of the case. Lesher and Walker filed demurrers to the complaint. What disposition was made of them does not appear, and it is immaterial as no exceptions were saved and the principal parties filed answers. The city of Denver, after general denials, admitted that plaintiff was properly upon the premises where the injury occurred, and that he fell into the pit, alleging that the injury received was very slight; that the pit or area way was not a defect in the sidewalk, nor one that should have been guarded by the city; that no hand or guard rail was necessary for the safety of the public in traveling along the street in front of or into the building; admits, " that a notice of the intention of plaintiff to bring suit was served upon the mayor of the city of Denver on September 13, 1889; " for a second defense, negligence of the plaintiff, his knowledge of the locality, etc. The defendant, Lesher, answered generally, admitting that he and associates were in the occupation of the premises as lessees of the defendant, Emily Middleton, alleging that the excavation was made long before his possession, and was not made by them; admits that the opening was immediately in front of the premises occupied by them, in the sidewalk, and was unprotected; alleging that the injury was not received upon the premises leased and occupied by them, but in the public street in front of the premises, and that the street was under the control of the city, etc.; second defense, knowledge of the premises by plaintiff, and that the injuries were caused by his negligence. Defendant, Emily Middleton, answered, denying the ownership of the premises, and asserting that the injury was caused by the negligence of the plaintiff, etc.

Mr. F. A. WILLIAMS and Mr. C. B. WHITFORD, for appellants.

Mr. C. HARTZELL and Mr. T. M. PATTERSON, for appellee.

REED, J., after stating the facts, delivered the opinion of the court.

It is seldom that a more troublesome and complicated case is presented for review. It will be conceded that the city, the owner of the property and the lessees were all proper and necessary parties defendant, but while necessarily so, it will at once be apparent that except upon the common ground of the contributory negligence of plaintiff, each defendant, for the purpose of shifting the responsibility, interposed and prosecuted a different line of defense, in fact, rendering joint defendants equally as antagonistic to each other as either was to the plaintiff. This condition led to great embarrassment upon the trial. The various individual issues involved were such that while almost any testimony offered might be properly admissible as between plaintiff and an individual defendant, much of it would be objectionable to codefendants. The same trouble arose in regard to the instructions of the court, and the embarrassment of the court is fully evidenced by the great number of conflicting and incompatible instructions prayed by different defendants; the great number and length of those both given and refused is such as to entail an immense amount of labor in this court in their examination alone; to attempt to reconcile and harmonize them would be equally impracticable, as it evidently was in the court below. The number of supposed errors assigned by the different defendants is rather startling, aggregating seventy-five, each assigning as erroneous all the instructions given for the plaintiff, each of the codefendants, those given by the court on its own motion and those prayed by the individual appellant and refused by the court.

The open, unprotected excavation, or area way, in the sidewalk between the front street line of the building and the street, of the character established by the evidence, was dangerous to life and limb of those who traveled the street, and such condition had existed so long that the city authorities had full knowledge of it. Not to have the knowledge, imputed such negligence as to render the city liable. By its charter the city is liable for such neglect to an individual injured, the owner of the property and the lessees are also liable.

To allow the sidewalk to remain in that situation was gross negligence, for which each and all were responsible, the owner and lessees for maintaining it and the city for failing to compel proper protection.   At common law either could have been prosecuted and a recovery had without making the others codefendants.   The wording of sec. 11 of the city charter (Sess. Laws, 1889) is peculiar:—"No action can be maintained against the city of Denver for damages to persons or property by reason of any defect in the streets or sidewalks of said city, which defect was caused by or was the result of the negligence of some other than an employee of the city, unless said person shall be joined with the city in the same action," etc.

It is difficult to arrive at the intention of the legislature, or proper legal construction of the paragraph.   Though blindly expressed, it would seem that, where the injury was received through the negligence of a third party, and there was no knowledge of the danger, nor negligence on the part of the city, the party directly causing the injury should be joined, and if judgment was obtained, the party directly responsible should be held primarily liable and the city's liability should be secondary.   It is very doubtful whether the clause can have any application in a case like the present, where the city, the property owners and lessees are all equally culpable.   To so construe it, at once raises the question whether or not by reason of its departure from, and contravention of, well-settled principles of common law, and by reason of its limitations and restrictions upon the plaintiff's right to bring and maintain an action, it could be regarded as constitutional.   Without determining that question, it can be safely said that it was never the intention of the legislature to compel a plaintiff to prosecute and maintain three different suits in one against three sets of *tort-feasors*, all and each equally liable ; nor can it be construed, as was attempted in this instance, to impose upon the plaintiff the burden of establishing his right of action against all the parties, and at the same time adjudicate the liability and settle the equities

of the respective defendants as to each other. Admitting the statute to be constitutional and the necessity of joining all the defendants in this case, and the right of each defendant to interpose any special defense not common to all, the rights of the plaintiff remained the same, and he could be required only to maintain the respective issues which were, as to him, plain and simple; maintaining his issues against all he could take judgment against all, failing as to some, and establishing his case against others, he could have judgment against those.

On appeal to this court for review, the only questions that can be considered are those in regard to the legality of the judgments obtained by Soloman against each appellant respectively; hence, the only alleged errors that can be considered are those that go to the issues between Soloman and the different defendants. In each assignment of errors, appellants respectively assign all the instructions given upon the prayer of each of their codefendants, not only requiring the plaintiff (appellee) to maintain the correctness of those going to the issues in his own case but those given upon side issues between the different defendants. In the determination of the case these supposed errors, only of importance to the defendants, must be disregarded.

The defense pleaded and, in common, relied upon by all the defendants, was the negligence of the plaintiff. Upon the trial, extreme latitude as to evidence to establish such negligence upon his part as would exonerate the defendants was allowed. In regard to the hour the injury occurred, the amount of light, the knowledge of the premises and of the pits by the plaintiff, etc., an immense amount of testimony was directed. All the facts possible were before the jury. Elaborate instructions were given to the jury at the instance of the plaintiff in regard to the contributory negligence of the plaintiff. A careful examination of the charge fails to show it objectionable or erroneous. At the instance of the defendant, the City of Denver, numerous instructions were asked upon the question of negligence, eight of which were

given, covering every possible phase of the case; some of them far more favorable to the defendant than warranted, so much so as to modify or conflict with the charge given for the plaintiff,—notably, the fourteenth instruction given on the part of the city was too favorable, was clearly objectionable, by submitting to the jury the question of ample room for use of pedestrians on the sidewalk between the pits and the street. It had no place in the controversy. The building front being on the street line, allowing the pits in the sidewalk unprotected, was gross negligence, regardless of whether there was sufficient room to avoid them.

If such defense could prevail, the city might exonerate itself from liability by showing the other side of the street or the next parallel street safe and unobstructed. Those asked or refused were either covered by the instructions given or were properly refused by the court, not being warranted by the law. Instructions upon the same issue asked by other defendants were properly rejected, the same ground having been covered, and the subject more than exhausted, by the instructions given.

It is also insisted by all the defendants that the court erred in refusing a nonsuit on the ground of plaintiff's contributory negligence. It is a well settled rule of law in all this class of cases that, in order to justify the court in withdrawing the case from the jury, the facts of the case should not only be undisputed, but the conclusion to be drawn from those facts indisputable. 2 Thomp. on Neg. 1236.

Cases in which the question can be withdrawn from the jury are rare. *Railroad Co. v. Stout*, 17 Wal. 657; *Railroad Co. v. Van Steinburg*, 17 Mich. 121; *Briggs v. Taylor*, 28 Vt. 183.

It is only where the circumstances of the case are such that the standard of duty is fixed and the measure of duty defined by law, and is the same under all circumstances, that the court can withdraw it from the jury. 2 Thomp. Neg., *supra; McCully v. Clarke*, 40 Pa. St. 399; *Railroad Co. v.*

*McElwee*, 67 Pa. St. 311; *Railroad v. Heileman*, 49 Pa. St. 63; *Meesel v. Lyman*, 8 Allen (Mass.) 234.

To leave the pits or man-traps unprotected, and for such great length of time, was clearly in violation of law, and the court could, as a conclusion of law, declare defendants guilty of negligence, but the accidental falling of a person into the trap cannot be so declared. In all such cases the question of contributory negligence is for the jury, to be determined from the facts and peculiar attendant circumstances of each case. See 2 Thomp. on Neg. 1178, and cases cited in notes; Whart. on Neg. 420, and notes; Redfield on Railways, 231; *Railroad Co. v. Stout*, (*supra;*) *Quimby v. Railroad*, 23 Vt. 387; *Langhoff v. Railway Co.*, 19 Wis. 516; *Weed v. Ballston Spa*, 76 N. Y. 329; *Whitaker v. West Boylston*, 97 Mass. 273; *Patterson v. Wallace*, McQueen's H. L. Cas. 748; *Briggs v. Taylor*, (*supra;*) *Railroad Co. v. Steinburg*, (*supra*).

It is earnestly contended in the argument of counsel for the city that the action could not be maintained for the want of a proper notice on the part of the plaintiff. It is provided by sec. 4, art. 13 of the city charter of 1889: "Before the city of Denver shall be liable for damages to any person injured upon any of the streets, avenues, alleys or sidewalks of the city, the person so injured, or some one in his behalf, shall give the mayor or city council notice in *writing* of such injury, within *thirty* (30) *days* after the same has been received, stating in such notice *when*, *where* and *how* the injury occurred and the *extent* thereof."

It is alleged in the complaint, " That notice of said accident, and of the intention of the plaintiff to bring this suit was duly served upon the mayor of Denver, September 13, 1889." The following appears in defendant's answer: " Admits that a notice of the intention of plaintiff to bring suit was served upon the mayor of the city of Denver on September 13, 1889." The counsel of defendant says in argument:—" The giving of this charter notice is indispensable; no action can be maintained against the city until a written notice containing all the charter requirements has been duly served,

either upon the mayor or the city council. It is a condition precedent."

In support of this conclusion there are many pages of argument and a citation of twenty-seven authorities. This clearly shows the painstaking and careful industry of counsel. Conceding the proposition, and admitting the applicability of all the authorities cited, how does it affect the case? It is alleged that the notice was given—the fact is admitted. If the notice was not in accordance with the law, the allegation should have been traversed, not admitted. A notice failing to comply with the statute is no notice. It was not reached by the demurrer, for a demurrer only goes to what appears in pleading. The notice was not set out. There is no rule of law requiring a pleader to incorporate his evidence into his pleading. Had an issue been made upon it, proof would have been necessary; then the question of sufficiency could have been determined. The admission in answer admits the legal sufficiency of the notice ; hence, there was no issue requiring proof—nothing in regard to it occurred upon the trial. Its sufficiency was a question of law,—the paper was not before the lower court, nor is it before this. No exception of any kind was saved in connection with it, nor any error assigned upon any action of the court in regard to it. There is no action of the lower court to review, and neither that court nor this have or has had an opportunity of passing upon its legal sufficiency.

It is contended also in argument that the street commissioner of the city of Denver was a necessary party, and not having been joined, the judgment was erroneous. We do not think he was a necessary party, but do not find it necessary to determine the question. Neither in pleading, nor upon the trial, was the question of the necessity of joining him raised. Such claim first appears in the instructions asked of the court, and error is predicated upon the court's refusal to instruct. The failure to join him or any other defendant should have been taken advantage of in apt time, in proper manner, in the court below, so that the omission

could have been remedied, or in the language of the common law, " so as to have given the plaintiff a better writ." After issue, trial and judgment, matter in abatement is too late. Code innovation upon common law practice has never been carried to the length of allowing counsel, upon review, to set up a defense negligently waived upon the trial. There was no error of the court in refusing the instructions asked upon this point.

Of all the authorities presented not one is in point,—they are each and all, to the effect that a public officer, upon whom is cast, by virtue of his office, certain duties, may be held personally liable to an injured party for damages sustained by reason of the neglect of legal duties imposed. Admit it. The question is not whether the plaintiff could have maintained an action against the street commissioner, but whether, failing to join him, vitiated a judgment against others who were also clearly liable. Upon this question, the only one involved, no authorities whatever are presented.

Counsel for defendant Middleton insist that she was not the legal owner of the premises, but that the title was in her son as trustee. It is clearly shown that she was actually the owner, having the equitable and beneficial title and receiving the income. This in actions of this character is sufficient; a tangible and defined interest united with the control would render her liable. A nominal trustee, with no beneficial interest and receiving no income from it, could hardly be required to keep property in repair at his own expense. It is urged that the court erred in submitting to the jury the question of ownership—that it was a question of law to be decided by the court, etc. Technically this was correct, but an examination shows that the question was submitted to the jury at her request. The first instruction given by the court, at her request, submitted the question of ownership to the jury. After clearly stating the legal situation of a trustee to the property, it continues : " If you believe from the evidence that the defendant, Middleton, was not the owner of the whole, or an interest in the premises upon which the ac-

cident occurred, and was not in possession of said premises at the time of the alleged accident, you should find for the defendant," etc. She, certainly, should not complain that the question was submitted to the jury at her request and in her own language. The jury was warranted in finding that she had an "interest in the premises;" that was all that was required by the instruction to render liable. Counsel also contend that, admitting the ownership, the premises at the time of the accident were in the control and possession of lessees ; that there was no evidence that they were out of repair when the lease was made, and that in order to hold the owner it was the duty of the plaintiff to make proof of such facts. Counsel are mistaken in the first statement. The testimony of the lessees established the fact that the excavation was in the same condition when leased as when the accident happened. They are also under a misapprehension in regard to the duty of plaintiff to make the proof. It was a question not involved in the issues he was required to try. It was a matter in which he had no interest whatever. As before stated, he could not be required to adjudicate issues entirely between defendants and adjust their respective liability.

The case of *Union B. Manf. Co. v. Lindsay*, 10 Brad. (Ill.) 583, cited and relied upon in support of the above proposition, fails to sustain it. First, there was no such statute as here compelling the joining of all parties. Plaintiff could elect. Second, the general exception there stated places this case outside the general rule. The court says: " The general rule of law is that the occupant, and not the owner, as such, is responsible for injuries received in consequence of failure to keep the premises in repair. To this general rule the authorities recognized these exceptions: First. Where the landlord has, by an express agreement between the tenant and himself, agreed to keep the premises in repair, so that, in case of a recovery against the tenant, he would have his remedy over against the landlord. There, to avoid circuity of action, the party injured by the defect and want of

repair may have his action in the first instance against the landlord. Second. Where the premises are let with a nuisance upon them, by means of which the injury complained of is received."

That the owner in this instance was liable, regardless of the statute, under the second exception. See 1 Thomp. on Neg. 317, and cases cited; *Gridley v. Bloomington*, 68 Ill. 47; *Chicago v. O'Brennan*, 65 Ill. 160.

The argument of counsel for the defendant, Lesher, is devoted entirely to the contributory negligence of plaintiff. The brief presented is able and exhaustive of the question discussed.

Further discussion in addition to what has been said above is unnecessary. Numerous errors are assigned on the part of Lesher, but do not appear to be relied upon by counsel, except those pertaining to the question of plaintiff's negligence. We have, however, examined them.

Our conclusion is that no sufficient error occurred to warrant a reversal, and that the judgment should stand as entered.

<div align="right">

*Affirmed.*