[Civ. No. 25486. First Dist., Div. Four. Dec. 23, 1970.]

GIORDANO BIANCHI, Plaintiff and Appellant, v.
WESTERN TITLE INSURANCE & GUARANTY CO.,
Defendant and Respondent.

## COUNSEL

Werchick & Werchick and Arne Werchick for Plaintiff and Appellant.

Bronson, Bronson & McKinnon and Frederick A. Morgan for Defendant and Respondent.

Landels, Ripley & Diamond and Greig A. Gowdy as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**DEVINE, P. J.**—Plaintiff was injured while working as a maintenance man. He alleges that the condition of the building was unsafe, wherefore he was caused to fall. His injuries evidently were substantial, for there is asserted a large workman's compensation lien of his employer, a service

company. This action is brought against defendant, Western Title Insurance & Guaranty Co. Judgment of dismissal upon nonsuit was granted on the proposition that the title company, although holder of legal title, was not a trustee of an active trust and had no duty to keep the premises in repair. Appellant contends primarily that respondent is held to responsibility under the law, and secondarily that respondent is estopped to deny its suability as a defendant.

The complaint charges respondent and several Does with violation of duty to appellant by negligent maintenance of property. Respondent's answer contains general denials and alleges contributory negligence. It asserts that respondent held title to the property as trustee for certain designated beneficiaries. (Without doubt, respondent would be liable for negligence if it were an active trustee [*Johnston* v. *Long,* 30 Cal.2d 54 (181 P.2d 645)], wherefore the answer was not particularly informative on this point.) An amendment was allowed which increased the claimed damages, and a brief answer denying any damages was filed. Interrogatories were put to respondent, and answers were given which explained thoroughly the manner of operation and maintenance of the building and which assured plaintiff that respondent's insurance policy was applicable to this case. Later, plaintiff sent a request for admissions, including one which would concede respondent's ownership of the building. Respondent replied that it held "bare record title." At the pretrial conference, respondent apparently asserted that it held "bare record title" for certain designated beneficiaries, because the statement that it so held title appears in the pretrial conference order. But in the statement of factual and legal contentions, despite the recital of plaintiff's contention that the premises were under the control and jurisdiction of respondent, nothing is said about the significance of respondent's position as title holder, but only a declaration that the "defendant denies the material allegations of the complaint and asserts the affirmative defense of contributory negligence." The Does were dismissed; whether by suggestion of the assistant court commissioner or otherwise, does not appear. Since the statute of limitations had expired, this action foreclosed plaintiff from proceeding against anyone but respondent. No action was taken by respondent to have itself removed from the case at the conference or later by such means as motion for summary judgment. About a week before trial, plaintiff's counsel spoke to his adversary about settlement and was informed that plaintiff had sued the wrong party.

A trial on the issue of respondent's liability (assuming negligence, proximate cause, damages and lack of contributory negligence) was held in the jury's absence. The judge granted a motion for nonsuit and judgment of dismissal followed, from which this appeal is taken. The judge deemed himself bound by certain cases which are discussed below: *Richman* v. *Green,*

143 Cal.App.2d 470 [299 P.2d 890], *Brazowski* v. *Chicago Title & Trust Co.*, 280 Ill.App. 293, and *Pena* v. *Stewart*, 78 Ariz. 272 [278 P.2d 892]; but acknowledged that an appellate court might want to say, "in fairness and in justice to everybody," that the *Richman* case should be clarified or that the owner of legal title should be held liable with the right of indemnification against the real party (or parties). We are satisfied that fairness and justice do require that respondent be held to respond to plaintiff's claim and that the law, properly applied, supports our holding.

There is very little law on the subject of the liability of the holder of "bare record title." In *Richman* v. *Green,* 143 Cal.App.2d 470 [299 P.2d 890], Green was a merely nominal owner. His father-in-law, Fishman, could not read or write English, so he had deeded the property to Green, who had absolutely no real interest in it or in its management, the management being wholly Fishman's. The *trial court* had relieved Green of responsibility but held Fishman. Plaintiff did not appeal from the judgment in favor of Green; wherefore, the opinion of the appellate court, while it does sustain the judgment against Fishman, does not pass directly on the liability of Green.[1] The opinion holds that Green's liability is not primary, so as to exclude Fishman from liability to a third party, but that is all. Fairness and justice were completely served by holding the true owner and manager in that case, but would be denied by affirmance in this one.

In *Fields* v. *6125 Indiana Avenue Apartments* (Ill. App.) 196 N.E.2d 485, a bank, which had no other function than that of holding title, was held not liable; but the bank had disclosed the names and addresses of the individual beneficiaries, in answer to interrogatories. Plaintiff thereafter allowed the statute of limitations to run in favor of the beneficiaries.

*Pena* v. *Stewart,* 78 Ariz. 272 [278 P.2d 892], is a case in which one tenant was injured and another killed on premises which had been completely leased. Principles of landlord-tenant law were applied, and the beneficial owners were held not responsible for negligence of their lessee. Of course, a party farther removed, a title company which merely held title, was not responsible.

*Brazowski* v. *Chicago Title & Trust Co.,* 280 Ill.App. 293, holds that a trustee (the trust device being used partly by reason of dower interests in Illinois [p. 301]) was not liable for injuries resulting from the collapse of a fence, where the trustee was exempt, by the terms of the trust, from duties of management. But the court also remarks (at p. 305) that there was no evidence to show that the fence was used by any but a single tenant of the

---

[1]Fishman actually attempted to appeal from the judgment in favor of his co-defendant son-in-law but was held to have no standing. (143 Cal.App.2d at p. 472.) Green was uninsured. (This is stated in one of the briefs, with transcript references.)

premises, so that the landlord would not be liable. Therefore, even if the beneficiaries had been made defendants, no doubt they would have been free from liability. The court relied in part on *Eisenbrey* v. *Pennsylvania Co. for Insurance, etc.,* 141 Pa.St. 566 [21 A. 639], decided in 1891, which held a testamentary trustee immune from liability for injuries even if they were caused by nuisance (although causation, too, was negatived). The *Eisenbrey* court said (at p. 574) that if it were otherwise "it is within the bounds of reason to say that no one could safely act as trustee in Pennsylvania." Protection by liability insurance was not then available except in connection with such employers' liability insurance as was then available. (McNeely, *The Genealogy of Liability Insurance Law,* 7 U. Pitt. L. Rev. 169, 193-197.) Nor were modern conceptions of subrogation (a constantly expanding doctrine [cf. *Estate of Kemmerer,* 114 Cal.App.2d 810, 814 (251 P.2d 345, 35 A.L.R.2d 1393)]) considered.

In *City of Denver* v. *Soloman* (1892) 2 Colo.App. 534, 543 [31 P. 507], we have a combination of antiquity with dictum. The nominal trustee, the real owner's son, was not a party to the case. The real owner was held. There is a single sentence somewhat favorable to respondent: "A nominal trustee, with no beneficial interest and receiving no income from it, could hardly be required to keep property in repair at his own expense." This is not a holding that the trustee, absent from the case, would not be held in any circumstances.

The secondary sources cited by respondent are of little use on this point of law. Bogert, Trusts and Trustees (2d ed.) section 733, page 544, and 1 Perry on Trusts (7th ed.) section 329, page 570, are authority only for the converse rule that a trustee in possession is liable. 4 Shearman & Redfield on Negligence, section 772, page 1768, cites only the *City of Denver* case, distinguished above. 3 Scott on Trusts (3d ed.) section 264, cites only the cases which we have discussed above; it misstates *Richman* v. *Green* by saying that there "it was held that an action for injuries sustained in an elevator in the building could not be maintained against the trustee but could be maintained against the beneficiary" (at p. 2244). Actually, only what follows the "but" was held. 90 C.J.S., section 252, cites some of the few cases given above, plus *Williams* v. *Taylor* (Ala. 1837) 4 Port. 234, which shows its obsolete character by the nature of the action—one by the "owner" of a slave for damages for the latter's death on a steamboat; the "trustees" were creditors who had not yet come into possession of the boat. We find nothing in the texts cited by respondent to state a definitive and sustainable rule which would justify the nonsuit.

Even if it be an established rule (the decided cases being so few, some so old and some containing merely dictum on the point, we do not

care to say that it is or is not the rule) that the holder of naked legal title is not initially liable (with possible right of indemnity) for damages to third parties for injuries caused by negligence, the rule should not apply under the facts of this case. It is necessary to discuss the holding arrangement and the acts of the parties connected with it.

The real parties interested in ownership were about 13 owners who held shares ranging from five 150ths to thirty-three 150ths. They could and did exchange shares "internally," while respondent held title. The holding agreement exempted respondent from doing "any act relating to said property by virtue of which it shall assume or incur any liability or responsibility of any character."

Respondent was not, however, wholly inert. It applied, in its own name, to the Division of Industrial Safety of the State of California for permission to operate three elevators in the building. Permit was granted, the permit bearing respondent's name. Inspection of the elevators was done by inspectors retained by Federal Insurance Company, respondent's carrier, who were licensed by the state, so that state inspectors need not make the annual inspections required by the division. Holding of "bare record title" would not seem to include relationships of this sort to such potential activators of lawsuits as elevators.

Moreover, it was testified by an underwriter for Federal Insurance Company, the insurance company's inspectors carried out periodic inspections of premises covered by its policies and made recommendations to the broker "who in turn makes them to the insured." The engineer's report on the condition of the property at the company was under respondent's name. The insurance company which asserts that appellant "sued the wrong party" gives evidence, therefore, of having regarded this "wrong party" as the "right party" to notify of the very sort of thing, defects in the premises, which allegedly caused appellant's injuries. Respondent was the named insured. The policy also covered any disclosed or undisclosed owner. The premium was paid by "the syndicate," as one of its agents described the group whose names did not appear of record. This agent, in notifying the insurance company of a claim for an injury sustained on a stairway on the premises (not plaintiff's claim) described respondent as the assured in his "notice of loss."

But the factor of insurance has other relevance to the case than the carrier's recognition of respondent as the party who should be dealt with in respect of defects or possible claimed losses, no matter what respondent might do about these subjects later. The very fact that respondent was insured by *any* carrier might be sufficient to hold respondent to responsibility, because, as was conceded by an underwriter for Federal Insurance

Company, a carrier cannot write a policy for one who has no insurable interest. But the fact that respondent and all the beneficial owners were insured by the *same* carrier (the same policy, in fact) makes the case against respondent the stronger. In the first place, it is obvious that payment would have to be made, if liability were established, by the one carrier no matter which of its assureds were held to judgment. The carrier was so indifferent to names of assureds except respondent that Western Title Insurance (the "wrong party") was the *only* one named; the others, presumably the "right parties," are referred to in an endorsement which says: "The coverage afforded by the policy also applies to any disclosed or undisclosed owner, nominees, trustees, attorney in fact, representatives or agents in their individual or representative capacity as insureds." Of course, we do not mean to say that the existence of the common policy would suffice to hold anyone as defendant no matter who might be sued, such as a stranger, but that under circumstances where the carrier who must sustain loss has specifically named as assured the defendant, there is no justification for providing an escape for all interested parties including the carrier.[2]

Besides identity of the party who must ultimately pay any judgment which may be rendered in favor of plaintiff—the carrier—there is also to be considered the fact that the title company gave to the liability insurance carrier control of the defense of this litigation. Thus, this carrier could do what Western Title or an independent carrier for Western Title would not be likely to do, or to omit what would not have been omitted. Thus, when plaintiff asked if there were any reason why the liability policy would not apply to the accident, the reply was made that there was none, an answer which, if literally correct, is nevertheless inconsistent in effect with the theory that the only named defendant, and the only named insured, had no duty regarding the property. An independent carrier would probably assert that another carrier, and not itself, should bear the loss. Again, an independent carrier probably would plead the true situation. It would probably point out at pretrial conference that others were liable (thus preventing dismissal of the Does) rather than to stand alone to face whatever liability and expense might follow.

We think it unnecessary to discuss estoppel. We do hold that a pro-

---

[2]We reject respondent's assertion that to hold respondent would allow recovery against an innocent party because of the "fortuitous coincidence" that he may be insured by the same insurance company as another potential defendant. There was nothing fortuitous about the arrangement. It was planned to be just as it was. Nor do we find it difficult to answer respondent's questions: (1) Who pays the amount of any judgment in excess of the policy limits? The prayer of the amended complaint does not exceed the policy limits. Besides, indemnity might well be had against the "syndicate" if there were an excess. (2) Who pays any deductible? There is no showing that there was any deductible.

fessional title holder who places himself or itself in the position in which the title company did here, under all of the circumstances described above, cannot escape (put another way, the single carrier cannot escape) responding to plaintiff's charges.

■ There must still be met respondent's contention that liability results only from duty and that there was no duty on the title company to keep the premises in repair. To this the answer is that the duty is a derivative one, of the nature of that created by the rule of *respondeat superior.* Although "the syndicate" no doubt chose respondent rather than its choosing them, there was nevertheless a certain power of choice and of delegation (by transmittal of reports, etc.) possessed by respondent. If warnings, let us say about the elevators from the Division of Industrial Safety or about the condition of the premises from inspectors of the Federal Insurance Company, when sent to respondent and by it referred to "the syndicate" went unheeded; if "the syndicate" were to fail to keep the liability insurance in effect; or if a considerable prospective liability beyond the limits of the policy should develop—we may deduce that respondent would quickly direct corrective action to be taken and if it were not, would insist on withdrawal. We deem defendant's status sufficient, especially when we consider the oneness of the party mainly interested in the case, Federal Insurance Company.

The judgment of dismissal is reversed.

Rattigan, J., concurred.

**CHRISTIAN, J.**—I dissent.

In a complaint filed one day before expiration of the statute of limitations, appellant alleged liability on the part of respondent title company and 10 Does for personal injuries allegedly suffered on April 22, 1963, by reason of defective maintenance of a staircase in a building owned by respondent. Respondent answered, alleging that it held title "as trustee for certain designated beneficiaries" and explicitly denying that it "owned, operated, maintained and controlled" the building. Appellant nevertheless made no attempt to bring into the action the beneficial owners. The pretrial conference order determined that respondent "held bare record title to the premises involved as trustee for certain designated beneficiaries" but appellant apparently still made no effort to bring in those parties; the pretrial conference order included a provision dismissing "all fictitious defendants." There is no indication that appellant resisted that order, although the statute of limitations had by then run. Appellant's predicament, which resulted in the granting of a nonsuit, thus must be attributed to incomplete investigation and preparation of his case. I cannot join in rescuing appellant from the effect of his

counsel's neglect by thrusting strict liability upon a party having no control over, or responsibility for, the allegedly defective staircase.

The pretrial conference order, in determining that respondent "held bare record title" superseded the pleadings insofar as the pleadings defines issues inconsistent with the order. (Rule 216, Rules of Court.) Indeed, the evidence established that respondent was no more than the holder of bare legal title to the premises. The beneficial ownership, management and control of the property was in an investment syndicate; a series of holding agreements between respondent and the individual shareholders in the syndicate set forth the details of this arrangement. The agreement provided that respondent was under no obligation to do anything with respect to the property other than hold title in its name. An employee of respondent testified that respondent, pursuant to the terms of these agreements, did not concern itself with the property in any way other than to receive in behalf of the beneficial owners notices directed to it as the record title holder.

Appellant attempted to show that respondent had something to do with management of the property, despite the strong showing that it was actually managed by the real estate firm which had organized the syndicate of purchasers. Most of appellant's evidence consisted of various notices or letters which had been sent to respondent as the record title holder. Applications for elevator permits were executed in respondent's name (apparently by the managing real estate firm), were sent to that firm, and paid for from the rents collected by that firm. The premium on the liability insurance policy was determined on the basis of the record of a number of similar trusts held by respondent, but respondent had nothing to do with procurement of the policy and the record contains no indication of activity on the part of respondent in the nature of operation and management of the property as opposed to communications and transactions consistent with the role of a trustee holding bare legal title.

The basic rule as to the liability of the holder of bare title to property is that, "Although the trustee has the legal title to the trust premises, he is not liable to a third person for a tort which results not from the mere fact of ownership of the premises but from the operation of the premises, where the trustee has no responsibility for the operation of the premises." (3 Scott on Trusts (2d ed. 1956) § 264, pp. 2050-2055; see also Scott, *supra*, (1966 Supp.) at p. 65.) Scott notes that the bare title holder does have some liabilities merely because of the ownership (e.g., taxes, shareholder assessments), but distinguishes these from possible liability resulting from the *operation* of the premises (3 Scott on Trusts, *supra*, §§ 265-265.4, pp. 2056-2066; see *Richman* v. *Green* (1956) 143 Cal.App.2d 470 [299 P.2d 890]. Foreign cases similar to the *Richman* case include *Pena* v. *Stewart* (1955)

78 Ariz. 272 [278 P.2d 892]; *Fields* v. *6125 Indiana Avenue Apartments, Inc.* (Ill. 1964) 196 N.E.2d 485; *Brazowski* v. *Chicago Title & Trust Co.* (1935) 280 Ill.App. 293).

Contending that the holder of bare legal title should be liable for the injuries due to negligence of the actual managers in the operation of the premises, appellant cites *Johnston* v. *Long* (1947) 30 Cal.2d 54 [181 P.2d 645]. The *Johnston* case should be distinguished. The trustee in *Johnston* actually controlled the property of an active trust; he was directed to do so by the will of the deceased and had obtained court permission to operate the business. In *Richman, supra,* and in the present case, the trustee was the record owner only; the agreements under which respondent held title expressly excluded respondent from operation or management of the property; there was no evidence that respondent went beyond the functions anticipated. The holding agreements and the testimony of respondent's employee indicate that respondent took no part in the management of the premises; the evidence offered by appellant for the purpose of showing that respondent did take part in management decisions goes no further than to show that respondent performed functions consistent with the status of a trustee holding bare legal title. Appellant's contention that the holder of bare record title to certain property is liable for torts occurring in the operation of that property should be rejected. There was no substantial evidence that in fact respondent undertook duties to the public by reason of performing functions beyond the holding of bare legal title. The court did not err in granting a nonsuit. (See *O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1]; *Minniear* v. *Tors* (1968) 266 Cal.App.2d 495, 505 [72 Cal.Rptr. 287].)

I would affirm the judgment.

A petition for a rehearing was denied on January 20, 1971, and the following opinion then rendered:

**THE COURT.**—Respondent, in applying for a rehearing, contends that there is variance between some of the court's statements and the record. Reviewing the record, we find that there were no misstatements. We explain briefly.

1. Respondent states that the reference to the answer to the interrogatories "which assured plaintiff that respondent's insurance policy was applicable to this case" is inaccurate because the answer, respondent asserts, was: "At this time there is no dispute as to the coverage under this policy." Nowhere in the record does the quotation given by respondent appear.

The interrogatories were not a part of the record, but at the hearing counsel for appellant informed the judge that the answer to an interrogatory is: "There is no reason why this policy doesn't apply to this accident." To this, counsel for respondent replied, "That is correct, Your Honor."

2. Respondent argues that the transcript makes it clear that the application for the elevator permit was not made by Western Title but by Federal Insurance Company. It is true that Federal employed a firm of elevator inspectors to apply for and obtain the elevator permits. According to the testimony of an officer of Federal, this was done because its policy covered Western for liability occurring as a result of elevator accidents at the premises. But the permit was issued in the name of Western Title and the permit was sent to that company, as appears from a letter sent from Western Title to the agent for the syndicate enclosing elevator permit of the Division of Industrial Safety and a reinspection report for each of the three elevators located in the building at 830 Market Street. When Federal Insurance Company received a report from the retained inspectors that the general condition of the elevators was satisfactory, the report was also addressed to Western Title.

Christian, J., was of the opinion that the petition for rehearing should be granted.

Respondent's petition for a hearing by the Supreme Court was denied February 17, 1971.