**James E. FRANKS, Individually and as next friend of David Franks and Stephen Franks, minors, Plaintiffs,**

**v.**

**DEL–MAR–VA COUNCIL, INC., et al., Defendants.**

Superior Court of Delaware, New Castle.

Submitted Jan. 2, 1976.

Decided Feb. 20, 1976.

Alan T. Boyd, of Bayard, Brill & Handelman, Wilmington, for plaintiffs.

Richard E. Poole, and Daniel F. Lindley, of Potter, Anderson & Corroon, Wilmington, for defendants Delaware Trust Co. and Bank of Delaware.

O'HARA, Judge.

The minor plaintiffs in this action, David and Stephen Franks, were injured in an accident at the Camp Rodney Scout Reservation near North East, Maryland, while participating in a Boy Scout camping weekend. Suit was instituted against defendant Del-Mar-Va Council, Inc. of the Boy Scouts of America ("Council"), which operated and controlled the Scout Reservation and plaintiffs have alleged negligence in connection therewith. Plaintiffs later amended their complaint to include as additional defendants the Bank of Delaware and Delaware Trust Company ("Delaware Trust"), as Trustees of the land comprising the Reservation, as well as Marion S. Berkley, Sr., the Scout Master in charge at the time of the accident. Defendants Bank of Delaware and Delaware Trust now move for summary judgment.

Defendants' motion is based upon the fact that at the time of the incident they held and now hold, only bare record title to the premises involved, as trustees for the Council. They explicitly deny that they possess either the right or the duty to operate, maintain or control in any way the Camp Rodney Reservation. They characterize their role as mere passive trustees.

In addition, Delaware Trust alleges that it does not even hold title to the particular property upon which the plaintiffs were injured and, having no interest in the premises, the action should be dismissed as to it irrespective of the trust relationship between Bank of Delaware and Council. It is conceded that the property Delaware Trust holds in trust for the Council consists of several small parcels adjacent to the main Camp Rodney tract, and does not include the site upon which plaintiffs were injured. It is obvious, therefore, that no basis of liability exists as to Delaware Trust and that summary judgment as to it should be granted.

The record discloses that Coleman DuPont, through an inter vivos trust, transferred title to a portion of the land which is presently utilized as Camp Rodney Boy Scout Camp to the Equitable Trust Company, predecessor of Bank of Delaware. By its terms, the trust agreement permitted the Boy Scouts of America, Wilmington Council, Inc. "to use said real estate as fully and to the same extent as if it were the owners thereof for such purposes as may be consistent with the objectives of the or-

ganization . . . ." In addition, the settlor also included in the trust a fund of $10,000 to be used for the purpose of paying the administration expenses of the trust and any other taxes or charges upon the real estate, leaving any remaining surplus for development of the property and for the erection and repair of buildings. Subsequent to the establishment of the trust, the Trustee asserted no control over the premises and, at all times, gave its blanket consent to any requests of the Council.

Bank of Delaware argues in support of its motion that although it holds legal title to the property upon which the accident occurred, it holds only bare legal title pursuant to a passive trust as evidenced not only by the terms of the trust agreement itself but also by the course of conduct of the defendant Trustee. Defendant contends that, in effect, its only real duty as Trustee is to hold title, except, perhaps, its responsibility for the exercise of certain powers which can only be exercised by the legal title holder. In fact, the defendant maintains that the trust mechanism is necessary in this instance only because it is a requirement of the National Council of Boy Scouts. The Council insists on such an arrangement in an effort to keep the property at all times under secure and reliable ownership while allowing the control and management of such property to remain solely in the hands of the local councils. Otherwise, defendant implicitly acknowledges, the trust would serve no purpose that could not equally be served without it since there are no active duties imposed upon the trustee.

Plaintiffs, while they do not disagree with defendant's characterization of its role as a passive one, and while they do not dispute the fact that the Trustee was not involved in managing or controlling the premises, maintain that the trustee's failure to assert control is not material if, by the terms of the Trust instrument, such control *should* have been exercised, particularly where such a duty did in fact exist.

■ Although in all summary judgment motions the decision must be based upon a review of the facts stated in the light most favorable to the party against whom judgment is sought, *Hazewski v. Jackson,* Del. Super., 266 A.2d 885 (1970); *Taylor v. Steele,* Del.Super., 266 A.2d 190 (1970), in this instance, however, it is particularly significant that the facts, at least as to the Trust instrument and the role assumed by the Trustee as manifested by its actions, are not in dispute. The issue here is simply what role the settlor contemplated and intended for the Trustee, as well as the determination of what, if any, liability attaches to that role.

■■ While it is generally held that a trustee is personally liable for all torts committed by him or by agents and servants employed by him in the execution of the trust, 90 C.J.S. Trusts § 252; 3 Scott on Trusts (2d ed.), § 264; *Bianchi v. Western Title Insurance & Guaranty Co.,* 14 Cal.App.3d 235, 91 Cal.Rptr. 857 (1970), reh. den., 14 Cal.App.3d 235, 92 Cal.Rptr. 745 (1971), it is also recognized that the trustee is not liable to a third party for negligence which results not from the mere fact of ownership of the premises but from the *operation* of those premises, where the trustee has no responsibility for such operation. 3 Scott on Trusts (2d ed.), § 264; *Eisenbrey v. Pennsylvania Co. for Insurance, Etc.,* 141 Pa. 566, 21 A. 639 (1891); *Brazowski v. Chicago Title & Trust Co.,* 280 Ill.App. 293 (1935). Thus, the trustee is generally not held liable for injuries occurring on the trust property unless he has possession or the right to possession of the premises. *Eisenbrey v. Pennsylvania Co. for Insurance, Etc.,* supra; 90 C.J.S. Trusts § 252.

■ The instrument under which the Trustee here held title expressly excluded defendant from the operation or management of the property and directed the beneficiary Boy Scout Council to use the property "as if it were the owner thereof". Moreover, there is no evidence that the re-

spondent went beyond the functions anticipated. As indicated above, subsequent to the creation of the Trust, the Bank of Delaware assumed the role of a passive trustee with no power of control or disposition, just as was envisioned in the trust agreement. Except for its duty to apply surplus income to payment of maintenance and repair of camp buildings and payment of taxes on the property, the Trustee merely "rubber-stamped" the wishes of the Council and acceded constantly to its requests, such consent being sought presumably for the sake of formality.

Several typical incidents are cited in which the Trustee expressly indicated its intention or obligation "to follow the wishes of the Council" on all decisions respecting the Camp Rodney property. Blanket approval was promptly forthcoming for such things as the lease of Camp Rodney shorefront land for fishing purposes, permission to timber various sections of the property, and approval for the grant of an easement to the Conowingo Power Company. The affidavits filed on behalf of defendant's motion include correspondence which clearly displays the Trustee's readiness and willingness to grant approval without any independent decision-making on its part. In short, it is safe to conclude that the Trustee never actively participated in developing the real estate nor in controlling or managing it.

In the few cases which have dealt with the liability of the holder of bare record title, [whenever the tort arose out of a failure to adequately maintain the premises], liability for the tort was attributed to the beneficiaries who possessed control and not the trustee who was merely a repository of the legal title. Thus, in *Eisenbrey v. Pennsylvania Co. for Insurance, Etc.,* supra, where the plaintiff was injured by a gate which suddenly swung open onto a sidewalk and knocked him down, a suit against the company as trustee of the property was held to be without merit since the trustee was found to have no right to interfere and had never, in fact, done so.

The Court particularly stressed that the company had had nothing whatsoever to do with putting up the fence and stated the general principle:

> "That the company, being a mere trustee, not in the occupancy of the property even by a tenant, and exercising no control whatever over it, can be held responsible in damages for this injury, is a proposition the mere statement of which carries with it its own convincing refutation."

See also, *Brazowski v. Chicago Title & Trust Co.,* supra; *Fields v. 6125 Indiana Avenue Apartments, Inc.,* 47 Ill.App.2d 55, 196 N.E.2d 485 (1964). In *Bianchi v. Western Title Insurance & Guaranty Co.,* supra, a non suit was reversed, the lower Court having held the defendant-trustee not liable for injuries occurring in a building upon which he held title. There, several active duties of the trustee were enumerated by the Court and it was clear that the trustee was sufficiently implicated in the management of the property to require that he be held to respond to the plaintiff's claim.

■ Plaintiffs, however, also point to the additional conveyance by the settlor of $10,000, in trust, to be used for various purposes as set forth in the instrument, such as the payment of necessary expenses in administering the trust. Plaintiffs suggest that the purposes enumerated there plainly impose active duties upon the defendant. Furthermore, they argue, had the Trustee properly fulfilled those obligations, particularly the use of the surplus in the development of the real estate, the accident in question may never have occurred. In essence, plaintiffs contend that the relevant acts of negligence which they charge against defendant, i. e., failure to adequately maintain the premises to prevent certain cliffs from collapsing and the real estate from eroding or, at the very least, failure to provide adequate warning of such peril, were a result of a breach of the Trustee's express duty to develop the real estate.

However compelling such an interpretation of the trust instrument may seem, nevertheless it is not persuasive when considered in the light of the wording of the entire instrument. The language which imposes the duty to develop the real estate is modified by the phrase, "suitable to the needs of said Boy Scouts of America, Wilmington Council, Inc." Clearly, the Trustee would not pay out surplus income without the knowledge of the needs of the Council and it made no independent decisions as to what those needs might be. Thus, as in the entire scheme of the trust instrument, the Trustee was dependent upon the recommendations of the Council as to how the surplus should be spent. The trust instrument, neither directly, nor indirectly, requires the Trustee to independently and actively seek out areas for development.

■ Finally, plaintiffs urge that the fact that the defendant was a named insured under the Council's policy at the time of the accident is compelling evidence that the Trustee had an insurable interest which it sought to protect through policy coverage. The issue of insurance may have some relevance to demonstrate ownership but it hardly constitutes an admission by the Trustee that it had exercised control over the premises upon which liability would attach. Actually, the Trustee's coverage under the Council's policy, when considered in light of the circumstances which led Council to request inclusion thereunder, suggests precisely the opposite conclusion.

From 1941 to 1949 the Trustee maintained its own liability policy covering the Camp Rodney property and the Council retained separate coverage. In 1949, it appears that the original trustee, the Equitable Trust Company, sought an opinion from counsel concerning the necessity of retaining liability coverage respecting the Camp Rodney functions. Thus, at that point, the Trustee obviously recognized that it might not even have an insurable interest due to its limited participation in the operation of the property. At that time, the Council's insurance carrier suggested that the Trustee be placed within the coverage of the Council's policy.

After the Bank of Delaware succeeded to Equitable's position as Trustee, it requested that it also be included as a named insured under the defendant Council's policy. The interesting and highly relevant fact about its request is that, in asking to be named as an insured, the Bank was motivated by the circumstance that its own blanket liability policy did not cover Camp Rodney specifically because it did not exercise sufficient control over the premises.

It is obvious that the requested coverage was intended merely as a safeguard to avoid even the most remote question of liability should a loss arise. Furthermore, the Bank of Delaware neither procured the policy nor has it ever paid the premiums.

For the foregoing reasons, the Court concludes that the motion of the defendants Bank of Delaware and Delaware Trust Company for summary judgment should be granted, there being no genuine issue of material fact.

IT IS SO ORDERED.